896 So.2d 943 (2005)
CITY OF TAMPA, a municipality and political subdivision, Appellant,
v.
Richard McAFEE, on behalf of himself and all others similarly situated, Appellee.
No. 2D04-3870.
District Court of Appeal of Florida, Second District.
March 9, 2005.
David L. Smith, City Attorney, and Kirby C. Rainsberger, Assistant City Attorney, Tampa, for Appellant.
Ronald S. Guralnick of Ronald S. Guralnick, P.A., Miami, for Appellee.
ALTENBERND, Chief Judge.
The City of Tampa appeals an order granting Richard McAfee's motion for class certification and a separate order *944 enjoining the City from enforcing section 14-27 of the Tampa Code of Ordinances. See Tampa, Fla., Code § 14-27 (2002). The ordinance is a motor vehicle impound ordinance that is very similar to the ordinances that have been invalidated in Mulligan v. City of Hollywood, 871 So.2d 249 (Fla. 4th DCA 2003), review pending No. SC04-990 (Fla. filed May 27, 2004), and City of Miami v. Wellman, 875 So.2d 635 (Fla. 3d DCA 2004), review pending No. SC04-1408 (Fla. filed July 15, 2004). We affirm the temporary injunction, but we reverse the order granting the motion for class certification and remand for further consideration of that motion.
Mr. McAfee filed this action in 2003, alleging that he was arrested and charged with possession of marijuana on December 17, 2002, by officers of the Tampa Police Department. At the time of his arrest, he allegedly was driving a car, which was seized and impounded pursuant to section 14-27 of the Tampa Code of Ordinances. As a result of this impoundment, he was required to pay a $500 bond for the release of the car and another $390 for towing and storage charges. Following a finding of probable cause by a hearing master, he was forced to forfeit these funds.
Mr. McAfee has not alleged that he was falsely arrested or that he did not possess marijuana in the car. Instead, he maintains that section 14-27 is unlawful or unconstitutional for thirteen separate reasons. Primarily, he argues that the section is preempted by or conflicts with the Florida Contraband Forfeiture Act and that the procedures of the ordinance violate due process. See §§ 932.701-.707, Fla. Stat. (2003).
Section 14-27 was enacted in 1997. A copy of this ordinance is attached to this opinion as appendix "A." In summary, section 14-27 permits the police to temporarily seize and impound a vehicle whenever a police officer has probable cause to believe that the vehicle was used to facilitate the commission of drug crimes or prostitution. Once a police officer has seized such a vehicle, it is towed to the police impound lot and the owner is notified of the right to request a preliminary hearing to contest its impoundment. The hearing is scheduled on a somewhat expedited basis before a "hearing master provided by the city." At the preliminary hearing, the only issue is whether the police officer had probable cause to seize and impound the vehicle. The City has the burden of proof at this administrative hearing, but the rules of procedure and evidence are more informal than in a court proceeding.
If the City proves probable cause, the hearing master orders the continued impoundment of the vehicle pending a final hearing or the payment of a $500 civil penalty, along with towing costs and storage fees not to exceed $10 per day. In the alternative, the vehicle may be released upon the posting of an equivalent cash bond. If no probable cause is found at the preliminary hearing, the vehicle is released.
Without regard to whether the owner requests a preliminary hearing, the City is obligated to schedule and hold a final hearing, typically within forty-five days of the seizure. At this hearing, the City must prove by a preponderance of the evidence that the vehicle was used to facilitate the commission of one of the specified crimes. If this is proven, the $500 civil penalty is imposed and the vehicle owner is responsible for the towing and storage fees. If the City fails to prove its case, the vehicle is returned without the imposition of fees or costs. The ordinance provides that it does not apply if the vehicle is seized by a law enforcement agency pursuant to the Florida Contraband Forfeiture Act. See Tampa, Fla., Code § 14-27(c)(2) (2002); §§ 932.701-.707, Fla. Stat. (2003).
*945 Obviously, between 1997 and 2003, this ordinance was enforced against many people in addition to Mr. McAfee. As a result, Mr. McAfee alleged that he was a proper class representative for a broad group of people whose cars were seized and who paid the $500 civil penalty. His complaint contained the necessary allegations to satisfy the pleading requirements of Florida Rule of Civil Procedure 1.220.
As to the matter of damages and relief, Mr. McAfee's complaint seeks (1) a declaration that the enforcement of section 14-27 is unlawful, (2) a temporary and permanent injunction against the future enforcement of the ordinance, (3) a refund of all funds illegally collected by the City pursuant to the ordinance, (4) compensation to the vehicle owners for the loss of their vehicles, and (5) attorneys' fees.
The City answered the complaint and affirmatively alleged that it was not a proper class action, that some claims would be barred by the statute of limitations, that some potential class members had already released their claims, and that the complaint was subject to sovereign immunity and the requirements of section 768.28, Florida Statutes (2003).
Mr. McAfee then filed a motion to certify the class and a motion for summary judgment on all issues. The motions were heard by the trial court on June 29, 2004, which was after the Third District had issued Wellman and the Fourth District had issued Mulligan. Both of these cases had invalidated similar ordinances on the theory that they were preempted by the Florida Contraband Forfeiture Act. In light of this precedent, the trial court decided to grant the motion for summary judgment and the motion to certify a class. The City appeals both orders, and we consider each separately.

I. THE ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT
The order granting the motion for summary judgment accomplishes two separate legal functions without any detailed findings of fact or conclusions of law. First, it states: "Plaintiff's Motion for Summary Judgment is GRANTED." Second, it provides that the City is "enjoined from enforcing Section 14-27 of the Tampa Code of Ordinances from July 20, 2004." We interpret the second portion of the order as an order granting a preliminary injunction.
The City has appealed this order, but the only issue it has raised is the validity of the ordinance. This court has no jurisdiction to review a nonfinal order granting a motion for summary judgment.[1]See Palm Hill Villas Homeowners Ass'n v. Rose-Green, 855 So.2d 83 (Fla. 4th DCA 2003); Lidsky Vaccaro & Montes, P.A. v. Morejon, 813 So.2d 146, 148 (Fla. 3d DCA 2002). Thus, we have no authority to review the issue presented by the City. Hopefully, the supreme court will address the validity of these ordinances in Wellman and Mulligan. Wellman, 875 So.2d 635, review pending No. SC04-1408 (Fla. filed July 15, 2004); Mulligan, 871 So.2d 249, review pending No. SC04-990 (Fla. filed May 27, 2004).[2]
*946 To the extent that the order grants a temporary injunction, we do have jurisdiction to review this nonfinal order. See Fla. R.App. P. 9.130(a)(3)(B). We affirm that injunction as to the issues raised on appeal. Under Florida Rule of Civil Procedure 1.610(a)(1)(A), a temporary injunction is an extraordinary remedy that can only be granted if the movant establishes (1) a likelihood of irreparable harm, (2) unavailability of an adequate legal remedy, (3) substantial likelihood of succeeding on the merits, and (4) support for the injunction within considerations of public interest. See Snibbe v. Napoleonic Soc'y of Am., Inc., 682 So.2d 568, 570 (Fla. 2d DCA 1996). In this case, the City has not challenged the trial court's rulings on any of these four requirements. In light of the two cases from the other districts, the trial court certainly had a basis to conclude that Mr. McAfee was substantially likely to succeed on the merits. Indeed, the trial court was obligated to follow controlling precedents from the other districts. See Pardo v. State, 596 So.2d 665, 666-67 (Fla.1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts."). Given that we have no jurisdiction to review the order granting summary judgment, we decline to rule upon the merits of Mr. McAfee's various challenges to the ordinance under the guise of reviewing the preliminary injunction.

II. THE ORDER GRANTING CLASS STATUS
The order granting the motion for class certification is three pages in length. The class it certifies is: "All owners of motor vehicles impounded pursuant to Section 14-27 of the Tampa Code of Ordinances since its inception." This order is defective because it does not contain the necessary findings of fact. It contains only cursory conclusory statements and no detailed findings of fact. It does not contain the facts because the hearing on this motion was conducted quite informally. No affidavits or witnesses were presented, and the court reviewed limited documentation. The trial court had no evidence to permit it to enter adequate factual determinations.
A class action is a serious undertaking. It can permanently affect the rights and lives of people who have little knowledge or understanding of the action. It is important for a trial court to consider fully the ramifications of such an action before entering an order granting certification. See, e.g., Braun v. Campbell, 827 So.2d 261, 265 (Fla. 5th DCA 2002) (stating, "[t]he decision to certify a class should be made carefully on the basis of sufficient information because the granting of class certification considerably expands the dimensions of the lawsuit and commits the court and the parties to much additional labor, over and above that entailed in an ordinary private lawsuit"). Rule 1.220(d)(1) requires, among other things, that the court's order on the class certification issue "shall separately state the findings of fact and conclusions of law upon which the determination is based." This court has made it clear that it will not accept conclusory findings in an order granting class certification. See Ernie Haire Ford, Inc. v. Moira Gilley, ___ So.2d ___, 2004 WL 3192624, No. 2D04-109 (Fla. 2d DCA Feb.18, 2005); Rollins, Inc. v. Butland, 852 So.2d 895 (Fla. 2d DCA 2003).
It seems likely that this ordinance has affected a large enough group of people to establish numerosity. As to the facial validity of the ordinance, Mr. McAfee would seem to be an adequate representative. But once the case reaches the question of damages, the adequacy of his representation would seem to become far more complex.
*947 If the representations at the hearing by the lawyer for the City are correct, the actual facts in this case are significantly different than the allegations. The City's lawyer claimed that Mr. McAfee's car was impounded after a hit-and-run accident on December 12, 2002. The marijuana was found pursuant to an inventory search. Mr. McAfee was arrested five days later, presumably in an arrest that did not involve the car. If the representations of the lawyers are true, then Mr. McAfee's car was lawfully towed and impounded for reasons completely independent of section 14-27. He may have a claim to recover the $500 civil penalty, but his claim is quite different from the claim of a man who was simply caught soliciting a prostitute while driving a car. It is unlikely that Mr. McAfee adequately represents people who have a claim for towing and storage.
The trial court has also allowed Mr. McAfee to represent a class that includes members who made no claim within four years of payment. His own claim would appear to be well within any applicable statute of limitations. It would seem that the trial court would need to make some decision about the statute of limitations before it determines whether Mr. McAfee has a typical claim and can be an adequate representative for all claimants.
Likewise, Mr. McAfee's complaint does not contain multiple counts and appears to request monetary relief based only upon a theory of unjust enrichment. If sovereign immunity is determined to apply to this theory, Mr. McAfee may not be an adequate representative because he apparently has not complied with the notice provisions of section 768.28, Florida Statutes (2003).
Finally, the order contemplates the use of normal opt-out notification to the class pursuant to rule 1.220. The class in this case involves people who owned cars between 1997 and 2003 that were involved in crimes of prostitution and illegal drugs. This is a very unusual class. It likely includes many people who do not wish to further publicize a matter of indiscretion. In some instances it may involve criminal cases that were dismissed or sealed. We can envision that a husband may not be entirely ecstatic to come home from work to discover his wife, and co-owner of the family car, reading Mr. McAfee's notice of class action and learning for the first time about her husband's solicitation arrest in 1998. Similarly, a young woman who overcame her drug habit in 1999, and placed this bad experience into her private past, may not be happy to have Mr. McAfee sending notifications that allow her new husband to discover the secrets that she has chosen not to disclose.
This is a case requiring careful consideration before the entry of an order certifying a class. We reverse and remand the order to permit the trial court to conduct the necessary hearing.
Affirmed in part; reversed in part; and remanded.
FULMER and WHATLEY, JJ., Concur.

APPENDIX "A"

Tampa Code of Ordinances Section 14-27
Sec. 14-27. Impoundment of motor vehicles used to facilitate prostitution and drug related crimes.
(a) Definitions:
(1) Owner means the person or persons legally entitled to possession of a particular motor vehicle, whether or not a registered or titled owner.
(2) Co-owner means any owner in common with another regardless of marital relationship or the conjunctive *948 term used' on registration or title documents.
(3) Lienholder means any individual or entity which, as of the time of seizure, has properly perfected and filed a lien on the vehicle subject to seizure.
(4) Reason to know. A person or entity shall be deemed to have "reason to know" a vehicle may be used in violation of this section, if such person or entity knows the person who was granted control of the vehicle has previously been convicted of any offense which, if repeated, would subject any vehicle involved to seizure and impoundment under this section, or if other facts demonstrate knowledge that the person granted control of the vehicle is inclined to engage in drug or prostitution related activity.
(b) A motor vehicle shall be subject to seizure and impoundment whenever a police officer has probable cause to believe that the vehicle:
(1) Was used to facilitate the commission or attempted commission of an act of prostitution, assignation or lewdness as defined in Florida Statute section 796.07 (1995); or
(2) Unlawfully contains any controlled substance as defined in Florida Statute section 893.02 (1995); or
(3) Was used, intended or attempted to be used, to facilitate the commission of any violation of Florida Statutes chapter 893.
(c) This section shall not apply and no vehicle shall be seized or impounded pursuant to this section if:
(1) The vehicle was stolen at the time that it was otherwise subject to seizure and impoundment; or
(2) A law enforcement agency seizes the vehicle pursuant to the Florida Contraband Forfeiture Act; or
(3) At the time the vehicle is subject to seizure and impoundment, it is under the control of a person other than an owner or co-owner and such owner or all co-owners do not know, or have reason to know, that the vehicle may be used in violation of this section.
(d) Upon seizing a motor vehicle, the police officer shall:
(1) Arrange for the towing of the vehicle to the police impound lot; and
(2) Provide written notice to any present owner or person in lawful control of the vehicle of the fact of the seizure and right to request a preliminary hearing pursuant to subsection (e).
(3) If, at the time of seizure, no person present is a registered owner or registered co-owner, notice shall be sent by certified mail to all registered owners within two (2) business days of the date of seizure. The notice shall include the fact of the seizure and the right to request a preliminary hearing pursuant to subsection (e).
(e) Preliminary hearing; administrative penalty.
(1) Within five (5) business days of receipt of the notice described in subsection (d) above, the owner may request a preliminary hearing by delivering to the address provided in the notice a written request for a preliminary hearing. The written notice must be received by the city within the allotted time or the right to a preliminary hearing shall be deemed to be waived.

*949 (2) Upon timely receipt of an owner's written request for a preliminary hearing, the city shall schedule a hearing to be held within two (2) business days following the date of receipt of the request. The requesting owner shall be notified by telephone of the date, time and location of the hearing.
(3) The hearing shall be held before a hearing master provided by the city. The sole issue to be considered by the hearing master is whether the seizing police officer had probable cause under this section to seize and impound the vehicle. The formal rules of evidence shall not apply and hearsay evidence, including any relevant police report, is admissible. The burden of demonstrating probable cause is on the city.
(4) If the city establishes probable cause to support the seizure, the hearing master shall order the continued impoundment of the vehicle pending final hearing or the payment of an administrative civil penalty of five hundred dollars ($500.00) together with all towing costs and storage not to exceed ten dollars ($10.00) per day. Alternatively, the owner may secure release of the vehicle by posting a cash bond (money order or certified check) in the amount of five hundred dollars ($500.00) plus towing and anticipated storage, plus final hearing costs of fifty dollars ($50.00). If no probable cause is found at the preliminary hearing, the vehicle shall be released to the owner as soon as practical without the imposition of penalties or fees whatsoever.
(5) If the preliminary hearing is not held within the required time through no fault of the vehicle owner, the vehicle shall be released to the owner as soon as practical without the imposition of penalties or fees whatsoever.
(f) Final hearing.
(1) Within ten (10) business days of the date the motor vehicle is seized or within three (3) business days of a finding of probable cause following a preliminary hearing, whichever is later, the city shall notify by certified mail the vehicle owner of the date, time and location of a final hearing to be conducted pursuant to this subsection. The final hearing shall be held, unless waived by the vehicle owner or continued by order of the hearing master, no later than forty-five (45) calendar days after the date of seizure. The formal rules of evidence will not apply at the final hearing and hearsay evidence is admissible. The city shall have the burden to show by a preponderance of the evidence that the vehicle was used as set forth in subsection (b) above.
(2) If after the hearing a finding is made that the vehicle is subject to impoundment as provided herein and that none of the exceptions listed in subsection (c) apply, the hearing master shall enter an order requiring continued impoundment of the vehicle pending payment of five hundred dollars ($500.00) administrative civil penalty, towing and storage costs, plus hearing costs of fifty dollars ($50.00). If the hearing master determines that the city did not meet its burden of proof or that one of the exceptions set forth in subsection (c) apply, the vehicle shall be released to the owner as soon as *950 practical without the imposition of penalties or fees whatsoever. Any cash bond posted shall be returned.
(3) If the final hearing is not held within forty-five (45) days of the date of seizure through no fault of the vehicle owner, the vehicle shall be released to the owner as soon as practical without the imposition of penalties or fees whatsoever. The owner shall not be entitled to release of the vehicle for delays in receiving notice of the final hearing absent a showing of resulting prejudice.
(g) The city may take appropriate steps to perfect and foreclose its lien for towing and storage in cases where the seized vehicle is not redeemed by the owner. Incidental thereto, the vehicle may be released to a lienholder upon payment of towing and storage costs.
(h) The city attorney, or his designee, is hereby authorized to enter into settlement agreements as may be appropriate to accomplish the objectives of this section.
(i) Nothing herein shall be construed to prohibit the city from enforcing the provisions of this section against a vehicle initially seized pursuant to the Florida Contraband Forfeiture Act (but not both) if in the best interest of the city. (Ord. No. 97-62, § 1, 3-20-97)
NOTES
[1] In the past, we were permitted to review orders granting summary judgment pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv). That portion of the rule was repealed on January 1, 2001.
[2] Because this case may ultimately proceed as a class action, we note that the order granting summary judgment is somewhat ambiguous and does not comport with the trial court's oral ruling. In the transcript of the hearing, the trial court stated: "I have granted the summary judgment to the extent I found the ordinance invalid." At another point, the trial court expressly stated that it was not granting summary judgment on the affirmative defenses. The order does not appear to be so limited.